Joshua S. TWOGOOD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9881.

Court of Appeals of Alaska.

Nov. 21, 2008.

Ward Merdes, Merdes & Merdes, Fairbanks, for the Appellant.

Marilyn J. Kamm, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Joshua S. Twogood appeals the superior court's denial of his request for a clarification of his sentence. The underlying issue in this appeal involves the question of how to calculate the date on which a defendant becomes eligible to apply for discretionary parole when (1) the defendant is simultaneously sentenced for two or more crimes, and (2) the defendant's terms of imprisonment are either wholly or partially consecutive.

The precise issue is whether the defendant's parole eligibility date varies depending on which term of imprisonment is designated the initial or primary sentence—*i.e.*, the sentence to be served first, and which serves as the base for calculating the remaining wholly or partially consecutive sentences.

As we explain in this opinion, a defendant's parole eligibility date does indeed hinge on which term of imprisonment is considered the initial or primary sentence.

Alaska's current law on this subject—specifically, AS 33.16.090(b)(7)—contains explicit rules for identifying the primary sentence when a defendant is sentenced for two or more crimes. But this law was enacted in

2005,[1] and Twogood's offenses pre-date this law.

Alaska's pre–2005 law did not contain a rule for identifying the initial or primary sentence in situations like Twogood's. And (as we explain below), when the superior court sentenced Twogood, the court refused to identify which of his two terms of imprisonment was the primary one. This leads us to conclude that there is a flaw in Twogood's sentence—a flaw that makes it impossible to ascertain the date of Twogood's parole eligibility. Thus, Twogood is entitled to the sentence clarification he seeks.

*Underlying facts*

In 2000, Twogood was convicted of two felonies: attempted murder and first-degree sexual assault. For the attempted murder, Superior Court Judge Mary E. Greene sentenced Twogood to 20 years' imprisonment with 5 years suspended (15 years to serve). For the sexual assault, Judge Greene sentenced Twogood to 14 years' imprisonment with 4 years suspended (10 years to serve).

Judge Greene declared that the "time to serve" components of these two sentences would be partially consecutive, so that Twogood would serve a total of 20 years in prison (with an additional 9 years suspended). However, even though both the prosecutor and the defense attorney asked Judge Greene to be more specific about how Twogood's sentences were structured—*i.e.*, whether Twogood was to serve 10 years for sexual assault followed by a consecutive 10 years for attempted murder or, conversely, 15 years for attempted murder followed by a consecutive 5 years for sexual assault— Judge Greene refused to specify the precise way in which Twogood's two sentences added up to the composite 20 years to serve. Judge Greene concluded that this kind of specificity was not required because it made no difference to Twogood's total penalty. In particular, Judge Greene stated that the precise relationship of the two sentences did not affect Twogood's parole eligibility.

After Twogood began serving these sentences, the Department of Corrections notified him that he would be required to serve 11 years of his composite 20–year term before he became eligible to apply for discretionary parole—and that his parole eligibility date was therefore June 14, 2010.

(Twogood was arrested in connection with these offenses on June 13, 1999, and he remained in custody through his conviction and sentencing. Thus, he effectively began serving his sentence on the date of his arrest— June 13, 1999. *See* AS 12.55.025(c).)

Twogood questioned whether he was required to serve so much time before he was eligible to apply for discretionary parole, but in October 2003 the Board of Parole sent Twogood a letter confirming this June 2010 parole eligibility date.

Approximately two and a half years later, Twogood hired an attorney, and this attorney filed a motion in the superior court asking for clarification of Twogood's sentence. In this motion, Twogood's attorney argued that the order or structure of Twogood's two sentences did, in fact, affect the calculation of Twogood's parole eligibility date—and, thus, the superior court was required to clarify exactly how the two sentences were structured.

In response, the State argued that there was no ambiguity in Twogood's sentence— and that "[m]oreover, the decision about how to calculate [a prisoner's] eligibility for discretionary parole is ... one that the legislature has entrusted to the [Alaska] [P]arole [B]oard and/or [the] Department of Corrections".

Because Judge Greene had retired, Twogood's case was assigned to Superior Court Judge Randy M. Olsen. Judge Olsen agreed with the State that Twogood's sentence needed no clarification. Here are the concluding paragraphs of his decision:

> In essence, Mr. Twogood asks this Court to do the Parole Board's job. Courts can clarify sentences if there is ambiguity, but the Judgment and Order of Commitment signed by Judge Greene is quite clear. It unequivocally states that Mr. Twogood was sentenced to a composite sentence of 29 years with 9 [years] suspended .... ...

---

**1.** *See* SLA 2005, ch. 2, § 28.

[Twogood] must serve the statutory mandatory minimum periods of incarceration before he is eligible for discretionary parole. Because the Alaska Legislature has entrusted the task of calculating parole eligibility dates to the Alaska Parole Board, this Court will not engage in that activity.

The sentence imposed by Judge Greene needs no clarification. The Defendant's eligibility for discretionary parole is controlled by statutes. The Defendant's Motion to Clarify is DENIED.

Twogood now appeals the superior court's decision. In his brief to this Court, Twogood renews his claim that there is a crucial ambiguity in his sentence, and that this ambiguity needs to be clarified because the calculation of his parole eligibility date hinges on the structure of his two sentences (*i.e.*, which term of imprisonment is to be served first, and which is partially consecutive).

*Our request for the State to clarify its interpretation of the pertinent parole eligibility statutes, and the State's response*

After the briefing in this appeal was complete, we concluded that Twogood's request for sentence clarification was actually analogous to a request for relief under Alaska Criminal Rule 35(a)—the rule that authorizes a sentencing court to correct an illegal sentence at any time.

■ Twogood's sentence is not illegal in the sense that it exceeds the scope of sentences authorized for his crimes. But when a court fails to specify an essential component of a sentence, the sentence is legally incomplete and it can be corrected on the motion of either party. *See Christensen v. State*, 844 P.2d 557, 558–59 (Alaska App. 1993), and *Figueroa v. State*, 689 P.2d 512, 514 (Alaska App.1984). Here, Twogood argues that Judge Greene failed to specify an essential component of his partially consecutive sentences: to wit, which term of imprisonment was the initial or primary one, and which was secondary (*i.e.*, the one that is partially concurrent with, and partially consecutive to, the initial or primary sentence).

To determine whether Twogood's sentences are indeed missing an essential component, we have to decide whether Twogood is correct in his underlying assertion about parole eligibility—*i.e.*, his assertion that the structure of his terms of imprisonment affects the calculation of his parole eligibility date.

If Twogood is correct that his parole eligibility date hinges on which of his terms of imprisonment is to be served in full and which one is partially concurrent, then Twogood's sentence is legally incomplete. As we have explained, Judge Greene refused to clarify this matter—and, if Twogood is correct, the extent of his criminal liability remains unsettled without this clarification. On the other hand, if Twogood's parole eligibility date is the same regardless of how the superior court might have structured his two sentences, then Twogood's sentence would be complete for purposes of Criminal Rule 35(a).

Although the parties' briefs addressed this issue in general terms, neither brief contained a detailed analysis of the pertinent parole statutes and an explanation of why the structure of Twogood's sentences either did or did not make a difference to his parole eligibility date. We therefore began exploring this legal question on our own. Our research indicated that the structure of Twogood's sentences might indeed make a difference in the calculation of his parole eligibility date.

The beginning point of our analysis is the fact that, under Alaska law, a defendant who is sentenced for two or more crimes and who receives wholly or partially consecutive sentences does not become eligible to apply for discretionary parole until the defendant has served a specified portion of each sentence. Under both Alaska's current parole law and the earlier (pre–2005) version that applies to Twogood, the calculation of these requisite portions hinges on several factors. One critical factor is the identification of one of the defendant's sentences as the "initial" or "primary" sentence—because there is one method for calculating the requisite portion of the defendant's initial or primary sentence, and another method for calculating the requisite portions of the defendant's other sentences.

(In general, defendants who receive two or more wholly or partially consecutive felony sentences do not become eligible to apply for discretionary parole until they have served (a) the requisite portion of their "initial" or "primary" term of imprisonment, calculated as if that sentence had been the only one imposed, plus (b) additional (but generally smaller) portions of their other consecutive or partially consecutive terms of imprisonment. These portions vary according to the class of the felony, whether the defendant was subject to a mandatory minimum term, whether the defendant's sentence was presumptive or not, and whether the sentencing judge imposed a restriction on parole eligibility under AS 12.55.115.)

If Twogood had been sentenced under Alaska's current law, Twogood's eligibility for parole would be governed by AS 33.16.090(b) as re-written in 2005. Subsection (7) of this statute contains the rules for calculating the parole eligibility of defendants who receive consecutive or partially consecutive sentences. Under this subsection, a prisoner whose sentences are wholly or partially consecutive becomes eligible for discretionary parole when the prisoner has served the longest term yielded by the following three calculations:

(A) the composite total of any mandatory minimum sentence or sentences[,] ... including [mandatory consecutive terms imposed under] AS 12.55.127;

(B) any [minimum] term set [by the sentencing judge] under AS 12.55.115; or

(C) the amount of time [to qualify for parole eligibility] under [subsections] (1)-(5) of [AS 33.16.090(b)] for the sentence imposed for the [defendant's] primary crime [as that term is defined in AS 12.55.127], had that been the only sentence imposed, plus one-quarter of the composite total of the active term of imprisonment imposed as consecutive or partially consecutive sentences ... for all [of the defendant's] crimes other than the primary crime.

Under this current scheme, Twogood's parole eligibility would be governed by subsec-

tion (C), which directs the Parole Board to identify Twogood's "primary crime" under the rules specified in AS 12.55.127. Twogood would become eligible to apply for parole after serving the sentence for this identified primary crime, plus one-quarter of the consecutive portion of his other sentence.

(Under AS 12.55.127(d)(4), a defendant's primary crime is the crime for which the superior court "impose[d] the longest active [*i.e.*, non-suspended] term of imprisonment". If the defendant received the same amount of unsuspended imprisonment for two or more crimes, the defendant's primary crime is the one designated as "primary" by the sentencing court.)

Because Twogood committed his crimes in 1999, his parole eligibility is not governed by the current statutes, but rather by the pre–2005 version of the statutes.[2] But under the pre–2005 versions of AS 33.16.090 and AS 33.16.100, as supplemented by 22 AAC 20.055–075, the calculation of Twogood's eligibility date again seems to hinge on which of Twogood's sentences is his initial or primary sentence. The problem is that the pre–2005 statutes apparently do not contain a rule for identifying which of Twogood's sentences is the initial or primary one.

In order to give the State an opportunity to clarify its position on these matters (in case we had overlooked a clarifying statute or regulation, or we had misinterpreted the ones we found), we asked the State to respond to a series of five questions about how the Department of Corrections would, under the pre–2005 law, calculate the parole eligibility date of a prisoner who received partially or wholly consecutive sentences for attempted murder and first-degree sexual assault.

For present purposes, our Questions 3 and 4 were the most important ones. In these two questions, we asked the State to explain the parole eligibility calculation for the two different ways in which Twogood's sentence might be structured:

*Question 3:* Suppose that Twogood had received the following two sentences: (1)

2. The current version of AS 33.16.090(b) applies only to defendants "[whose] offenses [were] committed on or after March 23, 2005". SLA 2005, ch. 2, § 33.

attempted murder: 15 years to serve; (2) sexual assault: 10 years to serve, with 5 years of this sentence consecutive to the attempted murder sentence and 5 years of this sentence concurrent with the attempted murder sentence. How long would Twogood have to serve before becoming eligible for parole?

*Question 4:* Suppose that Twogood had received the following two sentences: (1) sexual assault: 10 years to serve; (2) attempted murder: 15 years to serve, with 10 years of this sentence consecutive to the sexual assault sentence and 5 years of this sentence concurrent with the sexual assault sentence. How long would Twogood have to serve before becoming eligible for parole?

The State's answers to Questions 3 and 4 confirmed our preliminary conclusion: the structure of Twogood's sentence (*i.e.,* the order of his terms of imprisonment) makes a significant difference in the calculation of his parole eligibility date.

*The State's response to Question 3:* In its response to Question 3, the State explained that if Twogood's attempted murder sentence is considered to be the initial one—that is, if Twogood was ordered to serve 15 years for attempted murder, followed by a consecutive 5 years for sexual assault—he would have to serve 90 months in prison before becoming eligible to apply for discretionary parole.

According to the State, this calculation has two steps. First, Twogood would have to serve the 5-year mandatory minimum term of imprisonment for attempted murder,[3] or one-third of the total 15 years to serve that he received for this crime—which, in Twogood's case, would be the same 5 years. Thus, Twogood would have to serve 60 months of his attempted murder sentence before becoming eligible to apply for parole.

Next, because Twogood faced an 8-year presumptive term for first-degree sexual assault, his 10-year sentence for that crime is divided into two parts: the 8-year presump-

tive term, and a 2-year increment based on aggravating factors.

Because (under our hypothetical) 5 years of this sexual assault sentence are concurrent with the attempted murder sentence, the State counts the first 5 years of Twogood's 8-year presumptive term as being served concurrently with Twogood's attempted murder sentence. This means that, of the 5 *consecutive* years that Twogood received for the sexual assault, the first 3 years are the remainder of his 8-year presumptive term and the next 2 years are the increment. Under the statutes, Twogood would be required to serve two-thirds of the presumptive portion (*i.e.,* two-thirds of 3 years, or 24 months) plus one-quarter of the increment (*i.e.,* one-quarter of 2 years, or 6 months).

Thus, all told, if Twogood's sentences are structured in this manner, he would not be eligible to apply for discretionary parole until he served a total of 90 months: 60 months for the attempted murder, plus 30 months for the consecutive portion of the sexual assault sentence.

*The State's response to Question 4:* In its response to Question 4, the State explained that if Twogood's sexual assault sentence is considered to be the initial one—that is, if Twogood was ordered to serve 10 years for first-degree sexual assault, followed by a consecutive 10 years for attempted murder—he would only have to serve 70 months in prison before becoming eligible to apply for discretionary parole.

Again, according to the State, this calculation has two steps. First, because Twogood faced an 8-year presumptive term for first-degree sexual assault, his 10-year sentence for that crime is divided into two parts: the 8-year presumptive term, and a 2-year increment based on aggravating factors. To become eligible to apply for parole under this sentence, Twogood would be required to serve two-thirds of the 8-year presumptive portion (*i.e.,* 64 months) plus one-quarter of the 2-year increment (*i.e.,* 6 months)—a total of 70 months.

---

**3.** Twogood committed the attempted murder in 1999, when the mandatory minimum term of

imprisonment for this crime was only 5 years.

With respect to Twogood's partially consecutive sentence for attempted murder, Twogood would have to serve 60 months of this sentence before becoming eligible to apply for parole. Again, the requisite portion is 60 months because 60 months (*i.e.*, 5 years) is both the mandatory minimum term of imprisonment for attempted murder and one-third of the total time to serve (15 years) that Twogood received for this crime.

However, because (under our hypothetical), the first 5 years of Twogood's attempted murder sentence are concurrent with his sexual assault sentence, Twogood would be concurrently serving the requisite 60 months of his attempted murder sentence while he served the requisite 70 months of his sexual assault sentence.

The result, as a practical matter, is that Twogood's parole eligibility date would not be affected by his attempted murder sentence. After serving 70 months in prison, Twogood would satisfy the parole eligibility requirement for both of his sentences.

*Why we conclude that Twogood is entitled to clarification of his sentence*

■ Having undertaken these calculations for us, the State now concedes that Twogood is currently eligible to apply for discretionary parole. In fact, the State concedes that Twogood became eligible to apply for parole almost two years ago—in mid-December, 2006.

However, in making this concession, the State is taking advantage of the ambiguity in Twogood's sentence—and is construing that ambiguity in the light most favorable to itself.

As we explained above, Twogood was arrested in connection with these offenses on June 13, 1999, and he has remained in custody from then until now. In other words, Twogood began serving his sentences on June 13, 1999.

This means that the State's conceded parole eligibility date—December 13, 2006—hinges on the implicit assertion that Twogood was required to serve 90 months (7½ years) before becoming eligible to apply for parole. But this would be true only if Twogood's sentences are structured as described in Question 3. In other words, the State's calculation of 90 months hinges on viewing Twogood's 15–year term of imprisonment for attempted murder as his initial or primary sentence, and on viewing his 10–year sentence for sexual assault as divided into two parts: 5 years to be served concurrently with the attempted murder sentence, and 5 years to be served consecutively to the attempted murder sentence.

But if, on the other hand, Twogood's sentences are structured as described in Question 4, then—by the State's own calculation—Twogood would only have to serve 70 months (5 years, 10 months) before becoming eligible to apply for discretionary parole. This means that his parole eligibility date would have been April 13, 2005—more than a year and a half earlier than the December 2006 date offered by the State in its concession.

In other words, the State's "concession" on this point simply highlights the underlying problem in this case. Because the superior court refused to clarify the structure of Twogood's partially consecutive sentences, there is an irresolvable ambiguity concerning how to calculate Twogood's parole eligibility date under the pertinent statutes. Twogood's parole eligibility date can not be calculated without knowing which of his terms of imprisonment is the initial or primary one, and which is the partially concurrent one. Thus, the structure of Twogood's sentences must now be clarified to resolve this matter.

■ Under Alaska double jeopardy law, this ambiguity must be resolved in Twogood's favor. See *Christensen v. State*, 844 P.2d 557, 558 (Alaska App.1993); *Curtis v. State*, 831 P.2d 359, 360–61 (Alaska App. 1992); *Love v. State*, 799 P.2d 1343, 1346–47 (Alaska App.1990); *Joseph v. State*, 712 P.2d 904, 906 (Alaska App.1986)—all holding that when an illegal sentence needs to be corrected, it may not be increased unless the increase is absolutely necessary to correct the illegality.

To avoid an after-the-fact increase in Twogood's sentence, we must choose the sentence structure that favors Twogood—the alternative that gives him the earlier parole eligibility date. Based on the State's responses to our questions, Twogood has a

significantly earlier parole eligibility date if his 20–year composite sentence is construed as a 10–year term of imprisonment for first-degree sexual assault, followed by a 15–year sentence for attempted murder of which 5 years is concurrent with, and 10 years is consecutive to, the sexual assault sentence.

*Conclusion*

The decision of the superior court is REVERSED, and the superior court is directed to amend Twogood's judgement so that it reflects the sentences explained in the preceding paragraph.