**Joshua S. TWOGOOD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10426.**

Court of Appeals of Alaska.

Feb. 5, 2010.

---

Jason A. Gazewood, Gazewood & Weiner, Fairbanks, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

This appeal is a sequel to our decision in *Twogood v. State*, 196 P.3d 1109 (Alaska App. 2008). In that earlier decision, we resolved a dispute concerning the date on which Twogood became eligible to apply for discretionary parole, and we directed the superior court to amend Twogood's written judgement to reflect our ruling. In the current appeal, Twogood raises various challenges to the

proceedings that occurred in the superior court following our earlier decision.

*Underlying facts: the indictment, the plea bargain, and the first appeal*

In 1999, Joshua S. Twogood was indicted on eight different felony counts: two counts of attempted murder (Counts I and II), five counts of first-degree sexual assault (Counts III through VII), and one count of kidnapping (Count VIII). These charges were resolved when Twogood reached a plea agreement with the State. Under the terms of this plea agreement, Twogood would plead no contest to Count I (attempted murder) and Count III (first-degree sexual assault), and the State would dismiss the other charges. Twogood and the State agreed that Twogood would receive a composite sentence of 20 years to serve, with the sentencing judge having the discretion to impose additional suspended jail time.

One of Twogood's sentences—his sentence for first-degree sexual assault—was governed by Alaska's presumptive sentencing law. As a first felony offender, Twogood faced an 8–year presumptive term of imprisonment for this offense.[1] (Twogood faced an indeterminate sentence of 5 to 99 years for the attempted murder.[2])

In connection with Twogood's sentencing for the sexual assault, the State proposed several aggravating factors under AS 12.55.155(c): (c)(1)—that his victim sustained physical injury; (c)(2)—that Twogood manifested deliberate cruelty during the offense; (c)(18)(A)—that Twogood committed the offense against a member of his household (his spouse); and (c)(18)(B)—that Twogood had engaged in prior sexual assaults against the same victim.

Twogood opposed most of these aggravating factors, but he conceded aggravator (c)(18)(A) (*i.e.*, that the offense was committed against a member of his household). Under Alaska's presumptive sentencing law, even if the State failed to prove the other proposed aggravating factors, Twogood's concession of this one aggravating factor authorized the superior court to exceed the 8–year presumptive term of imprisonment for the sexual assault.[3] The superior court did, however, find that the State had proved its other proposed aggravators.

In August 2000, pursuant to the plea bargain (and pursuant to its rulings on the aggravating factors), the superior court entered judgement against Twogood for attempted murder and first-degree sexual assault. For the attempted murder, the superior court sentenced Twogood to 20 years' imprisonment with 5 years suspended (15 years to serve). For the sexual assault, the court sentenced Twogood to 14 years' imprisonment with 4 years suspended (10 years to serve).

To comply with the parties' agreement that Twogood would receive a composite sentence of 20 years to serve, the sentencing judge declared that these two sentences would be partially consecutive, giving Twogood a total of 20 years in prison (with an additional 9 years suspended).

After the judge announced this sentence, both the prosecutor and the defense attorney asked the judge to specify the order of Twogood's sentences—*i.e.*, to specify whether Twogood's composite 20 years in prison was to consist of a 10–year sentence for sexual assault followed by a consecutive 10 years for attempted murder or, conversely, whether Twogood was to serve 15 years for attempted murder followed by a consecutive 5 years for sexual assault. But even though both parties sought this clarification, the sentencing judge refused to specify the precise way in which Twogood's two sentences added up to the composite 20 years to serve. The judge concluded (erroneously) that this kind of speci-

---

1. Former AS 12.55.125(i)(1)(A) (pre-March 2005 version).

2. Former AS 12.55.125(b) (pre-March 2005 version).

3. Former AS 12.55.155(a)(2) (pre-March 2005 version); *Cleveland v. State,* 143 P.3d 977, 984–85 (Alaska App.2006) (holding that, in cases governed by Alaska's pre-March 2005 presumptive sentencing law, a defendant's right to jury trial under *Blakely v. Washington* is satisfied if the superior court found at least one *Blakely*-compliant aggravating factor).

ficity was not required because it made no difference to Twogood's total penalty or to Twogood's parole eligibility.

Twogood filed an appeal of the superior court's sentencing decision. *See Twogood v. State,* Alaska App. Memorandum Opinion No. 4600 (July 24, 2002), 2002 WL 1627474— hereafter, *Twogood I.* In that appeal, Twogood attacked most of the superior court's rulings on the aggravating factors. However, he did not challenge the superior court's finding of aggravator (c)(1) (that the victim suffered physical injury). Moreover, as we previously explained, Twogood conceded aggravator (c)(18)(A) during the sentencing proceedings in the superior court. We affirmed the superior court's judgement.

*Underlying facts: Twogood's second appeal, in which he sought clarification of the order in which he was to serve his two sentences*

Another issue that went unchallenged in Twogood's initial appeal was the superior court's refusal to specify the order of Twogood's two sentences. Several years later, however, Twogood perceived that the order of his sentences might affect his parole eligibility date, so he asked the superior court to issue an order clarifying this matter.

By that time, Twogood's original sentencing judge had retired, so the case was assigned to another judge, Superior Court Judge Randy M. Olsen. Judge Olsen declined to further clarify Twogood's sentences; he concluded that the calculation of Twogood's parole eligibility date was a matter entrusted solely to the Department of Corrections. Twogood then appealed the superior court's refusal to take action.

In *Twogood v. State,* 196 P.3d 1109 (Alaska App.2008)—hereafter, *Twogood II*—we concluded that Twogood's parole eligibility date did, indeed, hinge on which of his two sentences was the "initial" or "primary" sentence (*i.e.,* the sentence to be served in full) and which one was the partially concurrent sentence. 196 P.3d at 1114. We then ruled that, because Twogood's original sentencing judge had refused to clarify this issue when the sentences were imposed, we were obliged to construe the ambiguity in Twogood's favor—*i.e.,* to interpret the superior court's

judgement in the manner that gave Twogood the earlier parole eligibility date. *Id.* This meant treating Twogood's 10–year sentence for sexual assault as his primary sentence, followed by a partially concurrent sentence of 15 years for attempted murder. *Id.* at 1115.

We then directed the superior court to amend Twogood's written judgement so that it reflected our construction of Twogood's sentences. *Id.*

*Underlying facts: the proceedings in the superior court following our decision*

Our decision in *Twogood II* was issued on November 21, 2008. Under Alaska Appellate Rule 303(a), the State had fifteen days to ask the supreme court to review our decision, but the State did not do so. Thus, pursuant to Alaska Appellate Rules 507(b) and 512(a)(2)[a], our decision took effect on Monday, December 8, 2008. Six weeks later, on January 23, 2009, Judge Olsen signed an amended judgement which, in effect, declared that Twogood's sexual assault sentence was his primary sentence, and that Twogood's attempted murder sentence was partially concurrent with (and partially consecutive to) the sexual assault sentence.

After Judge Olsen distributed this amended judgement to the parties, Twogood filed a "Motion for Reconsideration of [the] Amended Judgment". In this motion, Twogood challenged the amended judgement on two grounds.

Twogood argued that, before Judge Olsen could properly issue an amended judgement, the judge was obliged to hold a new sentencing hearing—and that Twogood was entitled to personally appear at that hearing.

Twogood also challenged one of his conditions of probation, Special Condition No. 9. This probation condition specified that Twogood was required to "[s]ubmit to a warrantless, non-consensual search by a law enforcement officer of [his] person, personal property, residence[,] or any vehicle [in which he is present] for prohibited weapons, controlled substances[,] and drug paraphernalia".

Twogood conceded that a *probation officer* could lawfully require him to submit to the types of searches described in Special Condition No. 9. But Twogood argued that Special Condition No. 9 was unconstitutional to the extent that it allowed these searches to be initiated by "[any] law enforcement officer".

Judge Olsen denied Twogood's motion for reconsideration. He explained that "[t]he amended judgment was generated [simply] to conform to the Court of Appeals decision"—and that, apart from clarifying the relationship between Twogood's two sentences of imprisonment, "[t]here were no other changes to the original judgment".

*Twogood's argument that Judge Olsen was required to hold a new sentencing hearing, and to afford Twogood an opportunity for allocution, before issuing the amended judgement*

■ Twogood argues that when Judge Olsen issued the amended judgement, the judge essentially "sentenced" Twogood in Twogood's absence—thus violating Alaska Criminal Rule 38(a). (This rule specifies that a defendant's presence is required "at the imposition of sentence".)

Twogood further argues that he was entitled to allocution—that is, entitled to personally address Judge Olsen concerning the sentence—before the judge issued the amended judgement.

We reject both of these contentions. Judge Olsen's issuance of the amended judgement was not a "sentencing"—because Judge Olsen made no decision concerning Twogood's sentence. As the judge explained when he denied Twogood's motion for reconsideration, his task in this case was purely ministerial.

This Court directed Judge Olsen to amend the written judgement so that it reflected our decision in *Twogood II*—our decision concerning the order in which Twogood was to serve his two sentences of imprisonment. Judge Olsen did this by adding the following language to the description of Twogood's sentence for attempted murder: "10 years [of this sentence are] consecutive to and 5 years concurrent with [the sentence imposed on] Count III [*i.e.*, the sentence for first-degree sexual assault]".

In performing this task, Judge Olsen had no discretion to deviate from our mandate in *Twogood II*. He was simply doing what we directed—making the written judgement conform to the interpretation of the original sentencing decision that we adopted in *Twogood II*. Because Judge Olsen was not performing a task that entailed the exercise of sentencing discretion, Twogood had no right of allocution and no right to be present. Thus, Judge Olsen could properly issue the amended judgement without holding a new sentencing hearing.

*Twogood's argument that Special Probation Condition No. 9 was imposed unlawfully*

■ As we explained earlier, one provision of Twogood's judgement—Special Probation Condition No. 9—requires Twogood to "[s]ubmit to a warrantless, non-consensual search by a law enforcement officer of [his] person, personal property, residence[,] or any vehicle [in which he is present] for prohibited weapons, controlled substances[,] and drug paraphernalia".

This condition of probation was part of Twogood's original judgement—*i.e.*, it was part of the judgement issued by Twogood's original sentencing judge in August 2000. Judge Olsen merely carried this provision over (along with all of Twogood's other conditions of probation) when he issued the amended judgement in January 2009.

In the "Motion for Reconsideration" that Twogood filed in the superior court, Twogood argued that this condition of his probation was unconstitutional under Alaska law because it authorized "[any] law enforcement officer"—not just probation officers—to initiate the described warrantless searches.

■ Twogood's argument was correct: under Alaska law, a probationer can be ordered to submit to warrantless searches by, or at the direction of, a probation officer, but a sentencing court has no authority to order a probationer to submit to warrantless searches by any law enforcement officer. *See Roman v. State*, 570 P.2d 1235, 1242 n.

20 (Alaska 1977); *Marunich v. State*, 151 P.3d 510, 516 (Alaska App.2006).

When Judge Olsen denied Twogood's motion for reconsideration, he did not address the merits of Twogood's argument about the special condition of probation. Rather, Judge Olsen merely noted that his amendment of Twogood's judgement was simply to make it conform to our decision, and that in all other respects the provisions of the original judgement remained unchanged. We interpret Judge Olsen to be saying that, given the procedural posture of the case, Twogood was not entitled to raise new challenges to these unchanged provisions of the judgement.

Neither Twogood's attorney nor Judge Olsen appears to have considered the possibility that Twogood could achieve the same purpose by filing a motion to modify the conditions of his probation under AS 12.55.090(b). However, we need not pursue this point further, because Twogood has chosen not to renew this challenge to his condition of probation in the present appeal. Instead, Twogood raises a different argument.

In his brief to this Court, Twogood argues that there never was a valid ground for including Special Condition No. 9 among Twogood's conditions of probation. However, Twogood does not renew his argument that the error lay in authorizing "[any] law enforcement officer"—as opposed to probation officers—to initiate the warrantless searches. Rather, Twogood argues for the first time that his sentencing judge had no valid basis for concluding that Twogood should be subject to warrantless searches for weapons or controlled substances *by anyone.*

■ Twogood bases his argument on the assertion that there is no direct relationship between the searches authorized by Special Condition No. 9 and the crimes for which he was convicted—first-degree sexual assault and attempted murder. See *Roman,* 570 P.2d at 1243, where the supreme court held that a sentencing judge should not require a probationer to submit to warrantless searches for drugs, weapons, or other types of items "unless there is a direct relationship [between those] searches [and] the nature of

the crime for which the [probationer] was convicted."

But in *State v. Thomas,* 133 P.3d 684 (Alaska App.2005), this Court gave a broad interpretation to this passage from *Roman.* We held that *Roman* authorized conditions of probation "that address[ ] the causes of, or the motivations for, the defendant's criminal behavior." *Id.* at 685. Thus, in *Thomas,* even though the defendant had not been convicted of a drug crime, we affirmed a probation condition that authorized warrantless searches for controlled substances because the sentencing court "could reasonably have concluded that [the defendant] had a problem with the abuse of controlled substances, and that [the defendant's] continued abuse of controlled substances would impede his rehabilitation or would contribute to renewed criminal behavior." *Id.* at 686.

The issue of whether Twogood's original sentencing judge had a sufficient basis (under *Roman* and *Thomas* ) for imposing Special Condition No. 9 was not presented to Judge Olsen during the superior court litigation. The issue is therefore not preserved for appellate review.

■ Moreover, Twogood has not shown that the original sentencing judge committed plain error when she included this warrantless search provision among the conditions of Twogood's probation. At Twogood's sentencing hearing in August 2000, the sentencing judge made specific findings regarding Twogood's violent tendencies and his history of drug abuse. Before the sentencing judge imposed the special condition of probation that authorized warrantless searches for prohibited weapons and controlled substances, the judge noted that Twogood had a "fairly long-time amphetamine problem". The judge also noted that Twogood had conceded, in his conversation with a state trooper, that he had an anger problem, and that Twogood had committed previous acts of violence against the same victim during the course of their relationship.

Given the foregoing, Twogood has failed to show plain error. That is, he has not shown that the record clearly fails to support the warrantless search provision under the rule of *Roman* and *Thomas.*

We therefore reject Twogood's claim that this special condition of probation was imposed unlawfully.

(The State argues that Twogood is not even entitled to litigate this claim. The State points out that Twogood could have attacked this condition of probation when he pursued his direct appeal of his conviction. The State contends that, because Twogood failed to raise this claim in his direct appeal, he is estopped from pursing this claim now. We need not resolve this issue because, as we have just explained, even if Twogood is entitled to litigate this claim, he is not entitled to relief.)

*Twogood's claim that Judge Olsen violated Alaska Criminal Rule 32 by failing to sentence him "without unreasonable delay"*

■ Under Alaska law, a person who has been convicted of a criminal offense has a right to be sentenced within a reasonable amount of time. *See* Alaska Criminal Rule 32(a) ("Sentence shall be imposed without unreasonable delay."); *Gonzales v. State*, 582 P.2d 630, 632 (Alaska 1978) (holding that the constitutional right to a speedy trial includes the right to a reasonably prompt sentencing).

Twogood claims that Judge Olsen violated his right to a prompt sentencing because, even though this Court's decision in *Twogood II* took effect on December 8, 2008, Judge Olsen failed to issue the amended judgement until late January 2009. (The amended judgement was signed on January 23rd and was distributed to the parties on January 27th.) This claim fails for a number of reasons.

First, Twogood did not raise this claim in the superior court.

Second, as we have already explained, Judge Olsen did not conduct a "sentencing" when he issued the amended judgement in Twogood's case. The judge simply performed the ministerial act of conforming the written judgement to the interpretation of Twogood's sentence that we announced in *Twogood II*.

Third, Twogood's argument fails to address one key aspect of speedy trial or speedy sentencing claims: before the govern-

ment will be required to justify the delay, the defendant must first show that the amount of delay (or more specifically, the delay that can not be attributed to the defendant or the defendant's attorney) surpassed some threshold amount of time. As we explained in *Alvarez v. Ketchikan Gateway Borough,*

> The supreme court has ruled that an unexplained delay of fourteen months or more is presumptively prejudicial, [citations omitted], and that, without an affirmative showing of prejudice, a delay of eight months or less is presumptively non-prejudicial. [citations omitted] ... Only after a defendant has established either actual prejudice or a presumption of prejudice do Alaska courts consider if the delay amounted to a constitutional violation. [citation omitted] This is done by balancing the four factors enunciated in *Barker v. Wingo* [, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ]: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his or her right, and (4) the prejudice to the defendant.

*Alvarez*, 91 P.3d 289, 294–95 (Alaska App. 2004).

This same analysis applies to claims of undue delay in sentencing. The most pertinent discussion of this issue is found in our decision in *Stocker v. State*, 766 P.2d 48, 50 (Alaska App.1988), where we explained why an eight-month delay in sentencing, all attributable to the arguable negligence of the court system, did not create a presumption of prejudice.

Twogood's brief does not address the question of whether Judge Olsen's six-week delay in issuing the amended judgement was a lengthy enough delay to raise a presumption of unreasonable, prejudicial delay. But given our decision in *Stocker*, it is fairly clear that this six-week delay does not create any presumption in Twogood's favor.

In the absence of any presumed prejudice, Twogood must affirmatively establish actual prejudice. Twogood does make one specific assertion of prejudice: he asserts that he was prejudiced "because, in addition to suffering further emotional distress from the continuing nature of his criminal case, he was

unable to ascertain what his exact sentence was." This assertion of prejudice is frivolous.

■ First, in both *Stocker,* 766 P.2d at 50, and *Holmes v. State,* 765 P.2d 112, 113 (Alaska App.1988), we held that a defendant who claims undue delay in sentencing is not entitled to relief when the only asserted prejudice arising from the delay is the emotional stress or anxiety experienced by the defendant.

Second, Twogood's claim of anxiety and uncertainty concerning the terms of his sentence is meritless on its face. Our decision in *Twogood II* specified exactly what Twogood's sentence was. Judge Olsen had no discretion to depart from our construction of the sentence when he issued the amended judgement; rather, Judge Olsen's duty was to conform the written judgement to our ruling. Thus, as soon as our decision in *Twogood II* became final (on December 8, 2008), both Twogood and his attorney knew precisely what Twogood's sentence was.

For these reasons, we reject Twogood's claim that he was denied his right to a prompt sentencing.

*Twogood's claim that he is being denied his right to rehabilitative treatment*

■ Two provisions of Twogood's judgement deal with the issue of sex offender treatment while he is in prison. The judgement states: "It is recommended that [Twogood] be afforded sexual offender treatment while [he is] incarcerated", and "[i]t is ordered that [Twogood] participate in and successfully complete sexual offender treatment if [it is] offered while [he is] incarcerated." In other words, Twogood's original sentencing judge recommended that the Department of Corrections offer sex offender treatment to Twogood while he was serving his sentence, and the judge ordered Twogood to participate in (and successfully complete) that treatment if it was offered.

In his brief to this Court, Twogood points out that, since the time of his sentencing in 2008, the Department of Corrections has altered its policy and no longer offers sex offender treatment to incarcerated prisoners; instead, the Department focuses its rehabilitative efforts on probationers and parolees. We discussed this change in Corrections policy in *State v. Lundy,* 188 P.3d 692 (Alaska App.2008).

Twogood asserts that, even though the Department of Corrections no longer offers sex offender treatment to incarcerated inmates, the Parole Board still evaluates a prisoner's eligibility for discretionary parole based, in part, on whether the prisoner has received and successfully completed sex offender treatment.

This may or may not be true. Twogood did not raise this claim in the superior court, and thus we have no finding by the superior court on this issue.

Twogood further asserts that, if the Department had continued to offer sex offender treatment to incarcerated inmates, Twogood would have participated in this treatment, he would have successfully completed the program, and thus he would have been released on discretionary parole earlier. Again, Twogood never raised these claims in the superior court. Moreover, Twogood's assertions are completely speculative.

Finally, even assuming that Twogood is being denied his right to rehabilitative treatment, the fault does not lie in the superior court's judgement. Rather, the fault (if any) would lie in the Department of Corrections' decision to cease offering sex offender treatment to incarcerated inmates. And, as we held in *Lundy,* a prisoner who wishes to challenge that decision can not pursue the matter in their criminal case. Instead, the prisoner must file a civil action against the Department. 188 P.3d at 696.

*Twogood's claim that both his original judgement and the amended judgement are illegal because they do not comport with the terms of Twogood's plea agreement with the State—or, alternatively, that Twogood is entitled to withdraw his pleas because the judgement does not incorporate all the terms of the plea bargain*

■ Twogood was indicted on eight different felony counts: two counts of attempted murder (Counts I and II), five counts of first-

**650**

degree sexual assault (Counts III through VII), and one count of kidnapping (Count VIII). These charges were resolved when Twogood reached a plea agreement with the State. Under the terms of this plea agreement, Twogood would plead no contest to Count I (attempted murder) and Count III (first-degree sexual assault), and the other charges would be dismissed. (Twogood and the State also agreed that Twogood would receive a composite sentence of 20 years to serve, with some additional time suspended.)

The written judgement in Twogood's case (here, we are actually speaking of both the original version issued in August 2000 and the amended version issued in January 2009) fails to conform to this plea agreement in one respect. The judgement correctly states that Twogood was convicted of two offenses: Count I (attempted murder) and Count III (first-degree sexual assault). But in the section that lists the counts of the indictment that were dismissed, the judgement lists only Counts II, IV, V, VI, and VII. In other words, Twogood's judgement fails to mention the fact that Count VIII (the kidnapping charge) was also dismissed.

According to Twogood, this omission makes the judgement "plainly illegal" because the judgement fails to conform to the terms of the plea agreement. Alternatively, Twogood argues that the superior court's failure to issue a judgement conforming to the terms of the plea agreement "renders the plea agreement invalid". We view the matter differently.

It is undisputed that the plea agreement called for the dismissal of Count VIII. This being so, the failure of the judgement to mention this fact is a clerical error. This error can be corrected at any time under Alaska Criminal Rule 36.[4] However, this clerical error does not make the judgement "illegal", nor does it entitle Twogood to withdraw from the plea agreement.

We additionally note that, under Criminal Rule 36, if a litigant believes that a judgement or order contains this kind of mistake, the litigant must seek relief from the court that issued the judgement or order. Twogood has never asked the superior court to rectify this error. He is not entitled to present this claim for the first time on appeal.

*Twogood's claim that he was sentenced in violation of the Sixth Amendment right to jury trial announced in Blakely v. Washington*

█ In *Blakely v. Washington,* 542 U.S. 296, 301, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004), the United States Supreme Court declared that the Sixth Amendment right to jury trial applied to the government's proof of aggravating factors that increased a defendant's potential maximum sentence. We have repeatedly acknowledged that, under *Blakely,* defendants who were subject to sentencing under Alaska's pre-March 2005 presumptive sentencing law had the right to demand a jury trial on the aggravating factors alleged by the State, and to demand that the government prove these factors beyond a reasonable doubt, unless the aggravating factors flowed directly from the jury's verdict or were premised on the defendant's prior criminal convictions.[5]

As we explained earlier in this opinion, Twogood was subject to presumptive sentencing on one of his offenses (the first-degree sexual assault). The State alleged several aggravating factors relating to this offense, and—in accordance with the procedures specified in Alaska's pre-March 2005 sentencing statutes—the sentencing judge ruled on these factors without submitting them to a jury. Then, in reliance on these aggravating factors, the judge increased Twogood's sentence for the sexual assault from the presumptive term (8 years' imprisonment) to an enhanced term of 14 years with 4 years suspended.

**4.** Criminal Rule 36 provides, in pertinent part: "Clerical mistakes in judgments, orders or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time and after such notice, if any, as the court orders."

**5.** *See, e.g., Malutin v. State,* 198 P.3d 1177, 1179 (Alaska App.2009); *Lockuk v. State,* 153 P.3d 1012, 1014 (Alaska App.2007).

Twogood correctly notes that this procedure violated the right to jury trial as announced in *Blakely*. However, the Alaska Supreme Court held in *State v. Smart*, 202 P.3d 1130, 1146–47 (Alaska 2009), that the *Blakely* right of jury trial is not retroactive— that this right applies only to defendants whose convictions were not yet final in June 2004 when the *Blakely* decision was announced.

As we noted earlier, the superior court entered judgement against Twogood in August 2000, and this Court affirmed the superior court's judgement on direct appeal in July 2002. Twogood petitioned the Alaska Supreme Court to review our decision, but that petition was denied on November 8, 2002.[6] Thus, under the supreme court's decision in *Smart*, Twogood apparently has no *Blakely* claim.

Twogood attempts to avoid this result by asserting that the superior court's issuance of the amended judgement in January 2009 constitutes a new sentencing event. Based on this assertion, Twogood argues that his conviction was entered long after *Blakely* was decided, and he is therefore entitled to attack his sentence on *Blakely* grounds. We reject this argument for several reasons.

First, as we explained earlier, Judge Olsen's issuance of the amended judgement was not a new "sentencing". It was a ministerial alteration of the wording of the written judgement to make it conform to the interpretation of Twogood's sentence that we adopted in *Twogood II*.

In *Twogood II*, this Court declared that, given the original sentencing judge's improper refusal to clarify the order in which Twogood was to serve his two sentences of im-

prisonment, the law required us to construe this aspect of the sentence in Twogood's favor. In essence, we declared that, as a legal matter, the sequence of Twogood's sentences had *always* been the sequence that we announced in *Twogood II*. This means that, as a legal matter, Judge Olsen's alteration of the wording of the written judgement was an act performed *nunc pro tunc*—an act done to retroactively correct a mistake committed earlier.[7]

Judge Olsen did not make a new sentencing decision. In particular, he did not reconsider either the proof or the sentencing effect of the aggravating factors that were litigated during Twogood's original sentencing. Accordingly, we conclude that the issuance of the amended judgement in January 2009 was not a new sentencing event that somehow resuscitated Twogood's right to insist on the *Blakely* right to jury trial.

Moreover, even if Twogood somehow could litigate a *Blakely* claim at this point, his claim would fail.

Because Twogood never asserted a right of jury trial at his original sentencing proceedings, Twogood's *Blakely* claim would have to be pursued as a claim of plain error.

 There is no plain *Blakely* error in Twogood's case. As we explained earlier in this opinion (and as we noted in our decision of Twogood's direct appeal),[8] Twogood conceded one of the State's proposed aggravating factors during the original sentencing proceedings in the superior court. In our prior *Blakely* cases, we have repeatedly held that a sentencing judge does not commit plain error when the judge relies on an ag-

---

6. *See* Alaska Supreme Court File No. S–10721. Information concerning this file (in particular, the date on which the supreme court denied Twogood's petition for hearing) can be found by going to:

http://www.appellate.courts.state.ak.us/frames 1.asp and then clicking on the "Opening Pleadings" button, located among the buttons at the bottom of the top half of the screen.

7. *See Peterson v. Swarthout*, 214 P.3d 332, 336 n. 2 (Alaska 2009):

"*Nunc pro tunc*" is a Latin phrase that means "now for then." [This phrase] is used

by courts to indicate that an order or document is being given retroactive effect. Courts may appropriately use this power to correct mistakes. For example, if a court order contains a clerical error, the court may issue a revised order that replaces the original. If the original order has already gone into effect by the time the error is noticed, the court may issue the corrected order "*nunc pro tunc*," making it retroactive to the date of the original order.

8. *Twogood I*, 2002 WL 1627474 at *3.

gravating factor that has been conceded by the defendant or the defendant's attorney.[9]

 Moreover, we held in *Cleveland v. State*, 143 P.3d 977 (Alaska App.2006), that in cases governed by Alaska's pre-March 2005 presumptive sentencing law, a defendant's right to jury trial under *Blakely* is satisfied "if there is at least one *Blakely*-compliant aggravating factor—*i.e.*, at least one aggravating factor that flows directly from the jury's verdict, or is admitted by the defendant, or is based on the defendant's prior convictions." 143 P.3d at 984–85.

Accordingly, even though the superior court gave Twogood an enhanced sentence for first-degree sexual assault (*i.e.*, a sen-tence that exceeded the applicable 8–year presumptive term) without submitting any of the State's proposed aggravating factors to a jury, the superior court did not commit plain error under *Blakely*.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

**9.** *See, e.g., Lockuk v. State*, 153 P.3d 1012, 1016 (Alaska App.2007); *Paige v. State*, 115 P.3d 1244, 1248 (Alaska App.2005).